IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| JOHN BUTLER,<br><br>Plaintiff<br><br>vs.<br><br>HOWARD SISSEM, et al.,<br><br>Defendants | 1:18-CV-00141-RAL<br><br>UNITED STATES MAGISTRATE JUDGE<br>RICHARD A. LANZILLO<br><br>OPINION ON DEFENDANTS' MOTIONS<br>FOR SUMMARY JUDGMENT<br><br>ECF NO. 125 |

I.  Introduction

Plaintiff John Butler, an inmate confined at the State Correctional Institution at Albion (SCI-Albion), initiated this pro se civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983. In his Complaint, Butler asserts that officials at SCI-Albion violated his constitutional rights as secured by the First, Eighth and Fourteenth Amendments to the United States Constitution by subjecting him to unlawful retaliation and failing to provide him with adequate medical care. ECF No. 3. Each of the Defendants identified in the Complaint is employed by either the Pennsylvania Department of Corrections (DOC) or the private medical entity contracted by the DOC to provide medical services to inmates at SCI-Albion. These include: Michael Clark, Superintendent of SCI-Albion; Jeri Smock, Chief Healthcare Administrator for SCI-Albion; Michael Edwards, the prison's registered nursing staff supervisor; Dr. Jose Boggio, the former Medical Director of SCI-Albion's Medical Department; and correctional officers Howard Sissem and Sean Delaney. *Id.* ¶¶ 4-9.

1

Following the close of discovery, the DOC-employed Defendants ("DOC Defendants") – Clark, Smock, Edwards, Sissem and Delaney – filed a Motion for Summary Judgment accompanied by a Brief in Support, Concise Statement of Material Facts, and an Appendix of Exhibits.[1] ECF Nos. 125-126, 131. Plaintiff responded by filing a Brief in Opposition, Statement of Material Facts in Dispute, and Declaration in Opposition. ECF Nos. 143-145. Defendants' motion is ripe for adjudication.[2]

II.     Factual Background

The following factual recitation is derived primarily from Butler's verified pleading, his medical and grievance histories, see ECF Nos. 126-2, 129-1, 129-2, and 145-1 through 145-15, and the Statements of Fact submitted by the parties, to the extent they are supported by the record. See ECF Nos. 131, 143, and 144. Between August 21, 2015 and February 23, 2018, Butler was admitted to UPMC Hamot Hospital on at least five occasions after complaining of severe chest pains. ECF No. 129-1 at 13, 22, 31-39, 40-60, 67-69, 278, 288-289, 293, 294-95, 296, 319-326; ECF No. 129-2 at 7-12, 43-52, 53-61, 62-75, 108-122, 123-151. Butler's treatment during that time included an emergency cardiac catheterization for an acute inferior wall myocardial infarction and a heart catheterization and stenting of his left anterior descending artery. ECF No. 129-2 at 53-61, 62-75.

Butler's allegations primarily revolve around his attempts to obtain a cell on the bottom tier of his prison unit so that he could avoid exacerbating his heart condition by traveling up and down stairs. Butler claims that he spoke with Dr. Boggio on February 18, 2017, requesting to be

---

[1] Dr. Boggio filed a separate motion for summary judgment. See ECF No. 128.

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

2

moved to a medical cell on the bottom tier of his prison unit so that he no longer had to use the stairs to reach his cell. ECF No. 147 ¶ 4. Dr. Boggio allegedly replied: "If you want to be moved into a medical cell and given proper treatment, stop pissing everyone off filing grievances!" *Id.* Butler notified Defendants Clark and Smock of Dr. Boggio's comment but received no response. ECF No. 143 ¶ 7.

On April 14, 2017, Butler filed a grievance seeking "bottom tier" housing due to his medical condition. *Id.* ¶ 9. On April 20, 2020, a physician's assistant granted Butler's request and entered a Physician's Order providing Butler with "lower bunk" and "ground level" designations. ECF No. 126-2 at 46. Despite being medically approved for a bottom tier housing assignment, Butler asserts that Defendant Delaney ordered him into a cell on the upper tier on numerous occasions between July 29, 2017, and May 20, 2018. ECF No. 143 ¶¶ 10-16.

In addition to his allegations concerning cell placement, Butler avers that on August 4, 2016, medical personnel were attempting to perform an electrocardiogram (EKG) in the prison's medical unit when Defendant Sissem entered and ordered staff to disconnect Butler so that he could be taken to the Restricted Housing Unit (RHU). ECF No. 143 ¶ 2. Sissem allegedly told Butler: "Get up! You are faking because you knew we were going to take you to the RHU later." *Id.* Despite Sissem's alleged interference, medical personnel completed the EKG, identified an abnormality, and emergently transferred Butler to UPMC Hamot for treatment. *Id.* Sissem denies attempting to interfere with Butler's medical treatment. ECF No. 126-2 at 56.

III.   Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere

3

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV.   Analysis

Relying on the factual averments outlined above, Butler primarily asserts the following claims against the DOC Defendants: 1) an Eighth Amendment deliberate indifference claim against Clark, Smock, and Edwards based on their failure to respond to his complaints concerning his medical treatment; 2) an Eighth Amendment deliberate indifference claim against Sissem and Delaney based on their intentional interference with his prescribed medical treatment; and 3) a First Amendment retaliation claim against Sissem and Delaney. ECF No. 3 ¶¶ 35-45.[3] Butler also challenges the overall adequacy of the medical care provided by Dr. Boggio during his time at SCI-Albion.

Invoking a host of overlapping defenses, Defendants now seek summary judgment on the following grounds: 1) Butler has failed to adduce evidence demonstrating the personal involvement of supervisory defendants Clark and Smock; 2) Butler did not administratively exhaust any grievance challenging his placement on the top tier in his prison unit; 3) Butler has failed to adduce evidence to support his First and Eighth Amendment claims; 4) Butler's Fourteenth Amendment claim is barred by the explicit source rule; and 5) Butler's negligence claim is barred by the doctrine of sovereign immunity. Each defense will be addressed in turn.

---

[3] The "preliminary statement" in Butler's Complaint also contains a passing reference to a Fourteenth Amendment due process claim and a state tort negligence claim. *See id.* at p. 1. Neither claim is discussed anywhere else in his pleading.

5

1. Personal involvement

To prevail on a § 1983 claim, a plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of respondeat superior."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Butler's only factual averment regarding Clark and Smock is that each of them "was made aware" of Butler's medical condition but took no action to implement and enforce his bottom tier status. ECF No. 143 ¶ 7. ECF No. 11 at 4. Based on this allegation, it is apparent that Butler is attempting to hold each prison official responsible for the unconstitutional action of other individuals based entirely upon their supervisory role in the prison system. As described above, this type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right. *See, e.g., Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and . . . failed to help him" is insufficient to state a claim for reliefs) participation in an administrative appeal process); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Because Butler's claims against Clark and Smock are based entirely upon their supervisory roles in the prison system, summary judgment is appropriate.

2. Exhaustion

Defendants suggest that Butler has failed to exhaust his administrative remedies regarding his claims relating to his cell assignment. The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action pursuant to 42 U.S.C. § 1983 challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life that do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed to the Facility Administrator for a second level of review. *Id.* Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's

Office")." *Id.* All three stages of review must be completed before a grievance is deemed administratively exhausted for purposes of the PLRA.

A review of the summary judgment record reveals that Butler filed two grievances related to his housing/cell assignment between April 20, 2017 – the date on which he received bottom bunk and bottom tier status – and the initiation of this lawsuit. In each grievance, Butler alleged that he had been improperly transferred to the RHU without notice or explanation. *See* Grievance Numbers 674451 and 680848, ECF Nos. 126-2 at 100-117. Neither grievance addressed Butler's assignment to a particular cell or housing tier, and neither identified any of the Defendants in this action. *Id.* Indeed, Butler appears to concede that he never filed a grievance concerning his medical placement in a lower tier cell, suggesting only that he was "not required to." ECF No. 144 ¶¶ 22-24. In the absence of any contrary evidence to create a triable issue of fact, Defendants have met their evidentiary burden and are entitled to summary judgment as to any claims pertaining to Butler's top tier housing assignment.

    3.    Deliberate indifference

Defendants next contend that Butler has failed to adduce evidence to support his Eighth Amendment claim. As noted above, Butler asserts that each of the Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197

9

(3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Butler's allegations of deliberate indifference take two different forms. He accuses Clark, Smock, and Edwards of deliberate indifference by omission – specifically, by failing to respond appropriately to Butler's complaints regarding the inadequacy of his healthcare. In contrast, he accuses Sissem and Delaney of proactively and intentionally interfering with his medical treatment by interrupting an EKG examination and refusing to honor his "bottom tier" cell restriction. Each of these claims will be discussed in turn.

 a. Failure to intervene

Butler's claims against Clark, Smock, and Edwards are based on their alleged failure to intervene despite being made aware that Butler was dissatisfied with his healthcare. Critically, however, neither Clark, the prison's superintendent, nor Smock, the prison's healthcare administrator, is a physician or healthcare provider. *See Whitehead v. Thomas*, 2017 WL 2664490, at *7 (W.D. Pa. May 23, 2017) ("Courts in the Third Circuit have recognized that CHCAs are 'indisputably administrators, not doctors'") (quoting *Thomas v. Dragovich*, 142 Fed. Appx. 33, 39 (3d Cir. 2005)). The Court of Appeals for the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who is already in the care of the prison's physician. *Durmer*, 991 F.2d at 67. This is because, "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a

prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement or deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Because there is no dispute that Butler received consistent treatment from the prison's medical staff, he cannot sustain a deliberate indifference claim against non-medical personnel such as Clark and Smock. *See, e.g., In re Wetzel*, 2016 WL 4945315, at *3 (W.D. Pa. Sep. 16, 2016) (rejecting a claim of deliberate indifference against a non-medical defendant because the plaintiff acknowledged that he had received treatment from prison physicians).

The same principle bars Butler's "failure to intervene" claim against Edwards, a nursing supervisor. Butler's only allegation against Edwards is that he knew of Butler's request for a lower tier cell but refused to intervene. In *Pearson v. Prison Health Service*, the Court of Appeals extended the rule in *Spruill* to encompass claims against non-physicians with medical training, such as nurses:

> In *Spruill*, we specifically indicated that a non-medical prison official will not be chargeable with deliberate indifference, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." 372 F.3d at 236. Now confronted with a set of defendants who are not physicians but have some amount of medical training, we clarify that the same division of labor concerns that underlie that rule apply when a nurse knows that a prisoner is under a physician's care and has no reason to believe that the doctor is mistreating the prisoner. Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who knows that the prisoner is under a physician's care is certainly "justified in believing that the prisoner is in capable hands," *id.* so long as the nurse has no discernable basis to question the physician's medical judgment.

*Pearson*, 850 F.3d 526, 540 n. 4 (3d Cir. 2017). Because the record clearly supports that Butler remained under a physician's care at all relevant times, he cannot sustain a claim for deliberate indifference against Edwards.

b. Intentional interference with medical treatment

Butler's claims against Sissem and Delaney are cut from a different cloth. Rather than alleging a mere failure to intervene, Butler contends that Sissem and Delaney proactively and intentionally interfered with his prescribed medical treatment and access to medical care. In *Estelle*, the United States Supreme Court acknowledged that a prison guard can violate the Eighth Amendment by "intentionally denying or delaying access to medical care . . . or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104. *See also White*, 897 F.2d at 109-10 ("Intentional interference with prescribed treatment" is "one of several methods of showing deliberate indifference to serious medical needs."). To survive summary judgment on such a claim, Butler must adduce evidence that Defendants intentionally denied, delayed, or interfered with his medical care. *Id.*

Butler's claim against Sissem is based on an incident that occurred on August 4, 2016, while Butler was receiving medical care after passing out. ECF No. 143 ¶ 2. In a sworn declaration, Butler avers that Sissem entered the medical department with members of his security team and "ordered that the Plaintiff be 'disconnected' from [an] EKG so that he could be taken to the [RHU] in connection with another inmate who earlier that day was found in possession of drugs." *Id.* Sissem then allegedly accused Butler of "faking" heart trouble to avoid being sent to the RHU. *Id.* Sissem denies doing so. *See* ECF No. 126-2 at 54-56.

While these conflicting accounts present a genuine factual dispute, a careful review of the record belies the materiality of that dispute. Critically, Butler concedes that Sissem's attempted interference, even if it occurred, did not prevent medical personnel from obtaining Butler's EKG results and emergently transporting him to UPMC Hamot for further treatment. Indeed, Butler's own declaration, as well as his medical records, each confirm that he received a full examination

and diagnosis despite Sissem's presence in the examination room. Consequently, Sissem's comments, even if inappropriate, did not deny, delay, or interfere with Butler's medical treatment. Summary judgment is warranted.

Butler's claim against Delaney stems from the latter's alleged refusal to place him on the bottom tier of the prison unit despite a medical recommendation restricting him to the ground floor. ECF No. 143 ¶¶ 10-15. As noted above, Butler failed to administratively exhaust this claim. Even if that was not the case, Delaney has submitted an uncontradicted affidavit stating that he had no authority to move Butler to the lower tier because his responsibilities "did not include determining cell assignments" at any time relevant to Butler's Complaint. ECF No. 126-2 at 52. Rather, "[c]ell assignments were made by the Unit Manager" – in this case, an individual named Suesser – and Delaney's only role was "to carry out the orders [he] received when inmates needed to be moved to different cells." *Id*. Based on this uncontradicted averment, no reasonable trier of fact could conclude that Delaney had the authority to interfere with Butler's medical treatment in the manner alleged. In the absence of any evidence to the contrary, Butler cannot sustain a claim for deliberate indifference.

4. Retaliation

In his second substantive claim for relief, Butler avers that Sissem and Delaney engaged in unlawful retaliation in response to Butler's past grievance history. Although not clearly articulated, Butler appears to allege that he experienced retaliation on two occasions: 1) after filing a grievance against Sissem on August 8, 2016, accusing him of attempting to interfere with Butler's medical treatment; and 2) after filing a grievance on April 14, 2017, seeking lower tier housing due to his medical conditions. ECF No. 143 ¶¶ 3-5, 10-12, 15.

To establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link. *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Butler's claim against Sissem can be quickly dismissed. According to Butler, a Unit Manager named John Tiller began harassing him shortly after he filed a grievance against Sissem. ECF No. 143 ¶ 3-5. When Butler refused to withdraw the grievance, Tiller removed Butler's single cell designation and "personally 'put [him] in handcuffs' and had him escorted to the RHU." *Id.* ¶ 5. Critically, however, Tiller is not a defendant in this action. As such, even if Butler experienced the retaliation alleged, he has failed to adduce any evidence connecting that retaliation to Sissem.

With respect to Delaney, Butler alleges that he repeatedly placed Butler on the top floor of the prison unit in retaliation for the grievance that Butler filed several months earlier against Smock and Boggio. ECF No. 3 ¶ 22; ECF No. 143 ¶ 14. This claim, however, suffers from the same two defects identified above: it has not been exhausted, and Delaney has supplied

uncontradicted evidence that he lacked the authority to control Butler's tier placement within the prison unit. Consequently, even if Butler's unfavorable housing status amounted to an adverse action, that action cannot be attributed to Delaney; he simply did not have the authority to punish Butler in the manner alleged. *See, e.g., Keeling v. Damiter*, 2011 WL 1984358, at *13 (M.D. Pa. Mar. 1, 2011) (rejecting retaliation claim against defendants who played no direct role in allegedly retaliatory cell assignments).

In addition, Butler has failed to establish that his April 2017 grievance against Smock and Boggio was a "substantial or motivating factor" in Delaney's conduct. The alleged retaliation did not begin until August 2017, almost four months after Butler filed his grievance against Boggio and Smock. As this Court has previously noted, "[f]or temporal proximity alone to show retaliatory motive, the time between the protected conduct and the adverse action cannot be more than a matter of days." *Jackson v. O'Brien*, 2021 WL 982739, at *10 (W.D. Pa. Mar. 16, 2021) (collecting cases). *Compare Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 & n. 5 (3d Cir. 2000) (noting that "a temporal proximity of two days is sufficient to establish causation"), *with Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (a temporal proximity of ten days is sufficient to establish causation "only when accompanied by other evidence of ... wrongdoing,"). The four-month span between Butler's grievance and Delaney's alleged retaliation is far too lengthy to establish retaliatory motive on its own.

Butler has also failed to identify any supporting evidence to establish retaliatory animus. Although he attributes Delaney's antagonism to the grievance that he filed against Smock and Boggio, courts have consistently rejected retaliation claims "against one defendant based on [protected activity] against another [individual]" for lack of retaliatory motive. *Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 Fed. Appx. 126 (3d Cir. 2014). *See*

*also Royster v. Beard*, 308 Fed. Appx. 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). This is because "there is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for [protected activity] against others." *Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009). In the absence of any evidence linking Delaney to Butler's grievance history, no reasonable finder of fact could infer that Butler's grievances were a "substantial or motivating factor" in Delaney's conduct.

For each of these reasons, Butler has failed to adduce evidence to support his retaliation claims against Sissem and Delaney. Summary judgment is appropriate.

4.  Fourteenth Amendment

Although Butler makes a conclusory reference to a Fourteenth Amendment due process claim in the preliminary statement of his complaint, that claim does not appear anywhere else in his pleading. Moreover, to the extent that he is using the Due Process Clause to challenge the adequacy of his medical care or allege unlawful retaliation, his claim is precluded by the more-specific-provision rule.

As explained by the United States Supreme Court in *United States v. Lanier*, the more-specific-provision rule provides that, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." 520 U.S. 259, 272 n.7 (1997). *See also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."). Pursuant to

this principle, allegations of inadequate medical care in the prison context must be analyzed "under the more specific Eighth Amendment standards set forth in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)," rather than the more general standards applicable to Fourteenth Amendment claims. *Classen v. Nutter*, 2017 WL 6017341, at *7 (E.D. Pa. Dec. 4, 2017). The same is true of claims alleging unlawful retaliation. *See, e.g., Whitney v. Posika*, 2021 WL 1566431, at *6 (W.D. Pa. Jan. 12, 2021) ("Whitney's allegations fit squarely within the First Amendment's prohibition of retaliation . . . and, as such, any Fourteenth Amendment claims are foreclosed under the 'more-specific provision rule.'"). Accordingly, Butler's Fourteenth Amendment claim – to the extent that one is asserted – cannot survive summary judgment. *See, e.g., Davis v. Pennsylvania Dept. of Corr.*, 2016 WL 1072911, at *7 (W.D. Pa. Mar. 18, 2016) (dismissing substantive due process claims regarding plaintiff's medical care because such claims "are more appropriately analyzed under the more specific Eighth Amendment provision than under the more general and open-ended standard of substantive due process"); *Lane v. Pennsylvania Dept. of Corrections*, 2015 WL 5016512, *12 (M.D. Pa. June 22, 2015) (dismissing plaintiff's Fourteenth Amendment claim as redundant of his First Amendment claim).

    5.    Negligence

Finally, Butler's pleading contains a passing reference to a "state tort claim for negligence." ECF No. 3 at p. 1. To the extent that such a claim was intended, Defendants correctly note that it would be barred by the doctrine of sovereign immunity.

In general, the doctrine of sovereign immunity provides employees of the Commonwealth of Pennsylvania with broad immunity from most state-law claims provided they are acting within the scope of their duties. *Walton v. Harkleroad*, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016) (citing 1 Pa. C.S. § 2310). Sovereign immunity applies "except as the

General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. Although the Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence against Commonwealth employees in a very limited and express set of circumstances," Butler's claim does not appear to fall within any of the enumerated statutory exceptions. *Id.* (citing 42 Pa.C.S. § 8522(b)).[4] Under such circumstances, summary judgment is appropriate. *Tibbens v. Snyder*, 2020 WL 5372097, at *5 (M.D. Pa. June 24, 2020) (citing *Kintzel v. Kleeman*, 965 F.Supp.2d 601, 606 (M.D. Pa. 2013)).

V.   Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted. A separate judgment will follow.

*/s/ Richard A. Lanzillo*
RICHARD A. LANZILLO
United States Magistrate Judge

Dated:  February 18, 2022

---

[4] Specifically, the General Assembly has waived immunity in cases of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S.A. § 8522.