IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| JOHN BUTLER, | ) 1:18-CV-00141-RAL |
| Plaintiff | ) |
| vs. | ) UNITED STATES MAGISTRATE JUDGE |
| | ) RICHARD A. LANZILLO |
| HOWARD SISSEM, et al., | ) OPINION ON DEFENDANT'S MOTIONS |
| | ) FOR SUMMARY JUDGMENT |
| Defendants | ) |
| | ) ECF NO. 128 |

I. Introduction

Plaintiff John Butler, an inmate confined at the State Correctional Institution at Albion (SCI-Albion), initiated this pro se civil rights action seeking monetary relief pursuant to 42 U.S.C. § 1983. In his Complaint, Butler asserts that officials at SCI-Albion violated his constitutional rights as secured by the First, Eighth and Fourteenth Amendments to the United States Constitution by subjecting him to unlawful retaliation and failing to provide him with adequate medical care. ECF No. 3. Each of the Defendants identified in the Complaint is employed by either the Pennsylvania Department of Corrections (DOC) or the private medical entity contracted by the DOC to provide medical services to inmates at SCI-Albion. These include: Michael Clark, Superintendent of SCI-Albion; Jeri Smock, Chief Healthcare Administrator for SCI-Albion; Michael Edwards, the prison's registered nursing staff supervisor; Dr. Jose Boggio, the former Medical Director of SCI-Albion's Medical Department; and correctional officers Howard Sissem and Sean Delaney. *Id.* ¶¶ 4-9.

1

Following the close of discovery, Dr. Boggio filed a Motion for Summary Judgment, supporting brief, Concise Statement of Material Facts, and Appendix of Exhibits.[1] ECF Nos. 128-130. Plaintiff responded by filing a Brief in Opposition, Statement of Material Facts in Dispute, and Declaration in Opposition. ECF Nos. 146-148. For the reasons explained below, Dr. Boggio's motion will be granted in part and denied in part.[2]

II.   Factual Background

The following factual recitation is derived primarily from Butler's medical records, *see* ECF Nos. 129-1 and 129-2, and the Statements of Fact submitted by the parties, to the extent they are supported by the record. *See* ECF Nos. 129, 131, 144 and 148. On August 21, 2015, Butler was admitted to UPMC Hamot Hospital after complaining of severe chest pains. ECF No. 129-2 at 62-75. A Hamot physician, Dr. Trageser, evaluated Butler and performed an emergency cardiac catheterization for an acute inferior wall myocardial infarction. *Id.* Butler was discharged from UPMC Hamot and returned to SCI-Albion on August 24, 2015. *Id.*

Butler failed to attend follow-up appointments with medical staff at SCI-Albion on August 31, 2015, and September 2, 2015. ECF No. 129-1 at 312. On September 4, 2015, Butler attended an appointment with a physician's assistant (PA) at which it was noted that Butler had not been compliant with his medication. *Id.* A prison physician met with Butler on September 17, 2015, to again discuss his compliance with his medications. *Id.* at 302, 312.

---

[1] The DOC-employed Defendants ("DOC Defendants") – Clark, Smock, Edwards, Sissem and Delaney – filed a separate Motion for Summary Judgment. *See* ECF No. 125.

[2] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

2

On October 1, 2015, Dr. Trageser performed a prescheduled heart catheterization and stenting of Butler's left anterior descending artery at UPMC Hamot. ECF No. 129-2 at 53-61. Butler was discharged on October 2, 2015, with instructions to attend a follow-up appointment with Dr. Trageser in six months. *Id.*

Throughout the following year, Butler received additional care and treatment on numerous occasions after reporting chest pain. These interventions included EKG studies, x-rays, a Holter monitor study, and at least one additional visit to UPMC. ECF No. 129-1 at 278, 289, 294-95, 296, 319-326; ECF No. 129-2 at 43-52.

Dr. Boggio began working at SCI-Albion on September 6, 2016. ECF No. 129-3. He first examined Butler for complaints of chest pain and shortness of breath on November 14, 2016. ECF No. 129-1 at 288, 293, 328. An EKG study revealed sinus tachycardia and possible left atrial enlargement, prompting Dr. Boggio to order Butler's transfer to UPMC Hamot for emergency treatment. *Id.* Butler remained at Hamot until November 16, 2016, undergoing a left heart catheterization, left ventriculogram, right femoral arteriogram, and selective coronary angiogram. *Id.* at 64-66. Boggio examined him at the prison the following day and noted no signs of distress following his discharge. *Id.* at 30.

On December 3, 2016, PA Deonna Strout examined Butler to address his complaints of chest tightness and shortness of breath. ECF No. 129-1 at 10, 29. She provided two nitroglycerin pills which helped for a short time. *Id.* An EKG taken that day revealed a normal sinus rhythm and a non-specific T wave abnormality. *Id.*

On December 5, 2016, a nurse evaluated Butler and noted his complaints of "crushing pain" in his chest over the past thirty days. *Id.* at 25-26; ECF No. 146-1 at 1. The nurse provided Butler with three doses of nitroglycerin between 3:03 p.m. and 3:26 p.m. *Id.*

3

According to Butler, an emergency call was placed to Dr. Boggio but he did not arrive for 45 minutes because he was "in his car asleep." ECF No. 147 ¶ 2. Butler further alleges that Dr. Boggio failed to conduct a reasonable examination and told Butler to "[s]top acting like a child and don't keep calling the guards. You are not mentally retarded, you can take care of yourself." Id. Dr. Boggio entered a note in Butler's medical file at 4:00 p.m. indicating that he had examined Butler for complaints of chest discomfort and observed normal vitals, no nausea and vomiting, and no abnormalities in Butler's head, eyes, ears, nose, and throat. ECF No. 129-1 at 29.

On December 29, 2016, a nurse evaluated Butler again for complaints of chest pain. ECF No. 129-1 at 9, 23-24. The nurse provided him with three doses of nitroglycerin and performed an EKG study which revealed sinus bradycardia and a possible inferior infarct. Id. Due to the EKG irregularity, Dr. Boggio was called for an emergency examination. Id. at 13, 22. Following that examination, Dr. Boggio transferred Butler to UPMC Hamot for further evaluation. Id. at 13, 22, 67-79; ECF No. 129-2 at 7-12.

On December 30, 2016, Butler underwent a stress test at UPMC Hamot. ECF No. 129-1 at 61-63. The study revealed normal functional capacity, no significant electrocardiographic abnormalities, chest discomfort consistent with angina, and a moderate size severity partially reversible perfusion abnormality in the inferior wall, consistent with prior infarction and ischemia in the right coronary artery distribution. Id. Dr. Erica Penny-Peterson examined Butler and noted that he displayed "improvement" since his prior hospitalization in November 2016. Id. at 14. She increased his medication, recommended that he continue with his current medical management plan, and instructed him to follow-up with the Hamot cardiology clinic. Id. Butler was discharged and returned to the prison that same day. ECF No. 129-1 at 22, 68. According

to Butler, when he later asked Dr. Boggio if his follow-up appointment would be scheduled, Dr. Boggio replied: "No! It costs too much and I am not going to waste the state's money on follow-up care." ECF No. 147 ¶ 3. Despite Dr. Boggio's declaration, he signed an order for Butler to attend a follow-up appointment with Dr. Trageser on March 28, 2017, at which Butler was instructed to continue with his current medical regimen and return to UPMC Hamot in one year. ECF No. 129-1 at 264-267.

On February 2, 2017, Dr. Boggio again ordered that Butler be transferred to UPMC Hamot for evaluation following complaints of chest pain. ECF No. 129-1 at 40-60; ECF No. 129-2 at 123-151. In the emergency room, his vitals were stable, his lab work was normal, and a chest x-ray showed no acute disease in the chest. ECF No. 129-1 at 53. An EKG study revealed sinus tachycardia, possible lateral infarct, and inferoposterior infarct age undetermined. *Id.* The examining physician noted that Butler had a cardiac cath performed in November of 2016 and that it was "highly unlikely that patient has developed further cardiac disease in the minimal time period between cath and present." *Id.* The hospital discharged him with a trial prescription of an angina medication and instructions to perform another EKG study in a week. *Id.*

According to Butler, he approached Dr. Boggio on February 18, 2017, and requested to be moved to a medical cell on the bottom tier of his prison unit so that he could avoid walking up and down stairs due to his heart condition. ECF No. 147 ¶ 4. Dr. Boggio allegedly replied: "If you want to be moved into a medical cell and given proper treatment, stop pissing everyone off filing grievances!" *Id.* Butler remained on the top tier for another two months before receiving lower tier status from a PA.

On February 23, 2017, Butler was again transferred to the UPMC Hamot emergency room following complaints of chest pain. ECF No. 129-1 at 31-39; ECF No. 129-2 at 108-122.

5

He was discharged the same day. *Id.* An echocardiogram performed the following day at SCI-Albion revealed grossly preserved left ventricular systolic function with no evidence of diastolic dysfunction, insignificant valvular heart disease, and normal pulmonary artery pressure. ECF No. 129-1 at 80-83.

Dr. Boggio's last day working at SCI-Albion was March 17, 2017. ECF No. 120-3.

III. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the

unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must to go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

IV. Analysis

1. Deliberate indifference to serious medical needs

Butler first contends that Dr. Boggio violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical

treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell*, 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018). It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted).

8

Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192 (3d Cir. 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

As a general matter, there is no question that the medical staff at SCI-Albion, including Dr. Boggio, provided Butler with consistent and adequate medical care for his heart condition. On each occasion that Butler reported chest pain or discomfort, Dr. Boggio and medical personnel at the prison addressed his complaints by providing medication and diagnostic testing, as warranted. When additional clinical examination was required, Dr. Boggio sent Butler to UPMC Hamot for additional cardiac care. There is simply nothing in the record from which a reasonable trier of fact might infer that Butler's overall medical concerns were inadequately addressed.

Despite the overall quality of his care, Butler contends that Dr. Boggio nevertheless displayed deliberate indifference on two specific occasions: on December 5, 2016, when he failed to immediately examine Butler in response to an emergency call from a nurse, and following Butler's return from UPMC Hamot on December 30, 2016, when he allegedly failed to schedule a follow-up appointment for budgetary reasons. *See* ECF No. 146. Neither allegation is supported by the record.

Regarding the December 5 incident, Butler maintains that Dr. Boggio failed to promptly respond to an "emergency call" placed by a nurse in response to Butler's chest discomfort.

Butler's medical records indicate that he lodged his complaint shortly after 3:00 p.m. and received nitroglycerin doses at 3:03 p.m., 3:10 p.m., and 3:26 p.m. By 4:00 p.m., Dr. Boggio had arrived, conducted a twenty-minute examination, and concluded that Butler's vitals were normal and that his discomfort was likely muscular rather than cardiac. Butler remained under the care of a nurse the entire time he was waiting for Dr. Boggio to arrive, and the incident ultimately did not require any additional care beyond what the nurse provided. In total, Butler was triaged, examined, diagnosed, and discharged within an hour. No reasonable trier of fact could conclude that this amounted to deliberate indifference.[3]

As to the second incident, Butler avers that a physician at UPMC Hamot ordered him to return for a follow-up visit at some point after his discharge on December 30, 2016. Dr. Boggio allegedly refused to schedule the follow-up visit, declaring that it "costs too much" and that he "[was] not going to waste the state's money on follow-up care." ECF No. 147 ¶ 4.

Courts have found plausible claims of medical indifference where prison physicians refuse to provide adequate care for non-medical reasons, such as cost-containment. *See, e.g., Robinson v. Corizon Health, Inc.*, 2016 WL 7235314, at *7 (E.D. Pa. Dec. 13, 2016). However, such claims arise only when a prisoner alleges that "the provision of medical care was both inadequate and motivated by improper or non-medical reasons." *Buehl v. Wexford Healthy Sources, Inc.*, 2017 WL 914275, at *7 (M.D. Pa. Mar. 8, 2017) (emphasis added). *See also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (noting that a deliberate indifference claim has "two very distinct subcomponents": the physician must have provided "inadequate medical care," and he must have done so "with the requisite state of mind"). The

---

[3] To the extent that Butler accuses Dr. Boggio of failing to promptly respond because he was "asleep in his car," there is nothing in the record to suggest that this was inappropriate. As noted in Butler's grievance response, Dr. Boggio was permitted to leave the infirmary for breaks, including visiting his vehicle. ECF No. 129-4 at 38.

10

second component – the "intent of the medical provider" – becomes critical only where "the care received by an inmate was clearly inadequate." *Robinson*, 2016 WL 7235314, at *7.

As discussed above, the care provided by Dr. Boggio was not clearly inadequate. Butler consistently received examinations, medication, diagnostic testing, and referrals to the hospital when necessary. Moreover, despite Butler's averment to the contrary, the record reflects that Dr. Boggio authorized a follow-up appointment with Dr. Trageser at UPMC Hamot on March 28, 2017, at which Butler was instructed to continue with his current medical regimen and return in one year. ECF No. 129-1 at 264-267. To the extent that Butler believes he should have received an earlier follow-up appointment, Dr. Boggio appropriately exercised his medical judgment in determining that Butler's symptoms did not warrant an earlier return visit. *See* ECF No. 129-4 at 28. Even if cost considerations factored into his decision, the record categorically reveals that Butler received adequate medical care despite those considerations. *See, e.g., Winslow v. Prison Health Services*, 406 Fed. Appx. 671, 674-75 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."). No reasonable factfinder could conclude that Dr. Boggio had acted with deliberate indifference under such circumstances.

2. Retaliation

Butler next asserts a retaliation claim based on Dr. Boggio's response to his request to be moved to a medical cell on the bottom tier of his prison unit so that he could avoid walking up and down stairs due to his heart condition. ECF No. 147 ¶ 4. According to Butler, when he

approached Dr. Boggio with his request, Dr. Boggio replied: "If you want to be moved into a medical cell and given proper treatment, stop pissing everyone off filing grievances!" *Id.*

To establish illegal retaliation for engaging in protected conduct, a plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). To be actionable, the adverse action "need not be great" but "must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). This is an objective inquiry. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).

In the instant case, Butler alleges that Dr. Boggio explicitly threatened to withhold – and, in fact, did withhold – a medically necessary housing recommendation because of Butler's past protected activity. Dr. Boggio does not directly refute this allegation by way of affidavit or declaration; rather, he suggests that it never happened because there is no reference to any request for bottom tier status in Butler's medical records. The Court notes, however, that if Dr. Boggio truly threatened Butler in response to his protected conduct, he would be unlikely to add a medical note to that effect. In any event, Butler's sworn averment that Dr. Boggio explicitly invoked his past grievances as the basis for denying his request for a medically appropriate cell is sufficient to create a triable issue of material fact as to whether that protected activity was a substantial or motivating factor in the adverse decision. Summary judgment on this claim will be denied.

V.     Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted in part and denied in part.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

Dated:  February 18, 2022